26 A.3d 918

Mark E. FURDA

v.

STATE of Maryland.

No. 100, Sept. Term, 2010.

Court of Appeals of Maryland.

Aug. 17, 2011.

Walter S. Booth, Bethesda, MD, for Petitioner.

Brenda Gruss, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

John Parker Sweeney, T. Sky Woodward, Kevin B. Mattingly, Womble, Carlyle, Sandridge & Rice, PLLC, Baltimore, MD, for amicus curiae brief of National Rifle Association.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, BARBERA, JJ.

ADKINS, J.

In this case we must determine whether a defendant's convictions for perjury and false information in a firearm application can be founded upon his failure to disclose a court order that is later reversed. After responding to a domestic altercation between Petitioner Mark E. Furda and his wife, Montgomery County police seized Furda's extensive collection of weapons and transported him to the hospital for a mental health evaluation. Furda was later transferred to a behavioral health facility. Upon release, Furda requested the return of his firearms, which a judge denied on the grounds that Furda had been committed to a mental institution and was, therefore, prohibited from possessing a firearm. Although Furda asked the judge to reconsider, he did not wait for the judge's response before traveling to a gun store to acquire a new gun. When filling out the application to purchase a firearm, Furda certified, under penalty of perjury, that he had

not been committed to a mental institution. His application was denied, and the State subsequently charged him with perjury and false information in a firearm application. A trial court later convicted him of these two offenses.

In two separate cases, Furda appealed both the judge's denial of his motion for the return of his firearms and his two convictions. In one case the Court of Special Appeals reversed the trial court's denial of Furda's motion for the return of his weapons, but in another, it affirmed Furda's convictions. In the latter case, the Court held that the judge's erroneous order could still serve as a predicate for perjury and false information in a firearm application because the order was in effect at the time Furda completed the application under oath.

Displeased with this decision, Furda petitioned this Court, presenting the following issues for our review: [1]

---

**1.** We have consolidated Furda's original three "Questions Presented" contained in his Petition for Certiorari, into two questions, and rephrased them for clarity and brevity. His original three questions are set forth below:

1) Is Maryland Form 77R legally inadequate? The Maryland State Form, Form 77R, used by the State Police as an application to purchase a regulated firearm, contains a question (Question 8) that is vague, ambiguous, imprecise and is clearly a compound question; thereby creating a situation where any answer is not precise and any answer could potentially be the wrong answer. An answer can be both right and wrong at the same time. This ambiguity and imprecision is compounded by the fact that Form 77R does not contain a "comments" section, nor an instruction to the applicant to attach an explanatory sheet explaining any of the related answers.

2) Should the Appellate Court's Order, vacating the Circuit Court's Order, be retroactively applied to the time of Mr. Furda filling out the application to purchase? Can a Defendant, in a criminal case, be convicted of perjury and false application for making a statement, on a form, that by decision of the Court of Special Appeals, is the correct answer? According to Mr. Furda's belief, it was the correct answer at the time of filling out the form; but at the time of the application, had been the subject of a Circuit Court Order, holding the opposite and which Circuit Court Order was subsequently vacated by the Court of Special Appeals?

3) Can a person commit perjury when he has a subjective belief that his answer to a question is correct and truthful, he has not made a deliberate attempt to deceive and it is eventually confirmed by the appellate court that his is, in fact, telling the truth?

1) In the State's required application to purchase a firearm, is a question asking whether the applicant had ever been adjudicated mentally defective or had been committed to a mental institution sufficiently unambiguous to serve as the predicate for a conviction of perjury and false information?

2) Is a statement on a State firearm application that the applicant had not been committed to a mental institution, made while the applicant was under a court order deeming him to have been "committed," sufficient evidence to support a conviction for perjury and false statement when the court order was later overturned on appeal?

For the reasons articulated below, we hold that the relevant question was not impermissibly ambiguous and that Furda knowingly and willfully answered that question falsely. Accordingly, we affirm Furda's convictions for perjury and false information.[2]

## FACTS AND LEGAL PROCEEDINGS

The events of this case were triggered by a domestic dispute between Furda and his wife, Karen. On February 27, 2003, Karen initiated a petition for an emergency mental evaluation of her husband, alleging that he had made threatening gestures with a gun against himself and against her. A SWAT team from the Office of the Sheriff for Montgomery County served Furda with the petition that night, and later seized many of his weapons, including fifteen rifles, one handgun, and ammunition. The SWAT team then transported Furda to Montgomery County General Hospital for psychiatric evaluation. Later, upon certification of two doctors, Furda was transferred to the Potomac Ridge Behavioral Health facility, where he was kept even though he refused to sign in. He was discharged from Potomac Ridge on March 4, 2003.

---

**2.** The State did not appeal the Court of Special Appeals's reversal of the trial court's order denying the return of Furda's weapons. Thus, the issue of whether Furda's stay at the behavioral health facility constituted "commitment," as that term is contemplated by federal law, is not currently before us and we will not address it in this opinion.

A year and a half after Furda's release from Potomac Ridge, the Montgomery County Circuit Court issued an order prohibiting Furda from contacting his wife and requiring that he surrender all firearms to law enforcement for the order's duration.[3] The order was to be in effect from its issuance on September 21, 2004 until March 16, 2006. By January 31, 2005, however, Furda violated this order when he contacted and threatened Karen, leading the Circuit Court to sentence him to a suspended one-year term of incarceration and two years of probation.[4]

On October 31, 2007, after his probation period had ended, Furda filed a Motion for Return of Property seeking the release of the firearms and all other property seized by the SWAT team in 2003. Following a hearing eight days later, the Circuit Court denied Furda's request in part (hereinafter referred to as the "Denial Order"), allowing only the return of "items appearing on the inventory that are not firearms or ammunition[.]" The court would not permit Furda to recover the firearms, finding that "[u]pon the evidence presented.... Furda is considered a prohibited person under 18 U.S.C. Section 922(g)(4)[5] and is thereby prohibited from possessing firearms." The court determined that this prohibition extended to the Montgomery County Code, which prevents a person from possessing a firearm if that person "has been confined to any hospital or institution for treatment of a mental disorder

---

3. The record does not enlighten us as to the underlying basis for this protective order.

4. Following the lead of the Court of Special Appeals, we shall refer to these domestic violence proceedings as the "Protective Order Case" and to the proceedings underlying the present action as the "Perjury Case."

5. 18 U.S.C. Section 922 provides, in pertinent part:
 It shall be unlawful for any person ... who has been adjudicated as a mental defective or who has been committed to a mental institution as a result of having been involuntarily committed to a mental institution ... or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. 18 U.S.C. § 922(g).

or for mental illness[.]" Montgomery County Code § 57–9(d). The court did not, however, determine whether Furda was also prevented from possessing firearms under State law.

On December 3, 2007, Furda moved for reconsideration of the Denial Order on the grounds that his evaluation by the behavioral health facility did not constitute commitment under federal law. The court denied that motion in a January 15, 2008 order. According to Furda, neither he nor his counsel received this order until "some time later."

On January 24, 2008, Furda walked into Gilbert's Guns, his motion for reconsideration in hand,[6] and applied to buy a Ruger Mark III, a .22 caliber, semiautomatic.[7] Relevant to the case here, Question 8 on the Maryland State Police Application and Affidavit to Purchase a Regulated Firearm asked: "Have you ever been adjudicated mentally defective or have you been committed to a mental institution?" Furda answered "No" to this question.[8] Furda also signed the bottom of the application, certifying the following: "I, the below signed Transferee/Voluntary Registrant, certify under the penalty of perjury that the above answers are true and correct and that I am not prohibited by law from purchasing or possessing a regulated firearm."

---

**6.** Furda claims that he showed the motion for reconsideration to the owner of Gilbert's Guns, Richard Gilbert, before filling out the application. Furda, however, filled out the application with Gilbert's general manager, Brian Penko, who testified that Furda never showed him the motion for reconsideration.

**7.** Prior to going to Gilbert's Guns, Furda consulted his attorney as to whether he was permitted to purchase a gun. His attorney expressed the opinion that Furda was eligible; however, he cautioned Furda that this was only his opinion, and did not tell him that he was then eligible to purchase a gun.

**8.** Furda also answered "No" to Question 12, which asked "Did you answer 'YES' to any of the above questions?" and advised the applicant that "[i]f you answered 'Yes' to any of the above questions, you are prohibited by law from purchasing and/or possessing a regulated firearm.... If you answered 'YES', DO NOT proceed any further with this application."

Based on his statements on the application, Furda was charged with perjury and making a false statement in a firearm application. At trial, Furda testified that he did not believe that he had been committed to an institution, instead characterizing his stay at Potomac Ridge as an evaluation:

> I was submitted to an emergency evaluation petition through the courts by my now ex-wife.... [She] filed a motion [of] false statements ... saying that I had threatened her and the children, which I had never done.
>
> ... [T]he Montgomery County Sheriff's Department was sent to my house, and did take me to Montgomery General.... I was then transferred to Potomac Ridge for the I guess 72–hour evaluation that is allowable by the courts ... I had ... read the discharge [which] stated that the doctor had a dilemma as to whether or not to commit me. However, there was no psychosis, no withdrawals, or bad presence, or anything like that. And that without any type of hearing or any adjudication I was released.

When cross-examined, Furda admitted that he had taken his motion of reconsideration to the gun store and that he understood that such a motion meant that he was "asking [the court] to reconsider [its] denial of [his] request[.]" Yet, he also maintained that he did not willingly and knowingly make a false affidavit, explaining that "legally I'm not prohibited. If I've never been committed, I am not a prohibit[ed] person."

Furda's attorney also took the stand for the defense, and testified that he had advised Furda of the contents of the Denial Order before Furda's trip to Gilbert's Guns. This advice included a discussion of the court's finding that Furda had been involuntarily committed to an institution:

[PROSECUTOR]: Now, ... you said [that] you discussed [the Denial Order] with your client.

[FURDA'S ATTORNEY]: Yes, the first order.

[PROSECUTOR]: ... Unquestionably then Mr. Furda understood that [the court] ruled that he was a prohibit[ed] person because he was involuntarily committed, correct?

[FURDA'S ATTORNEY]: That would be the essence of [the Denial Order].

[PROSECUTOR]: And you discussed that with him?

[FURDA'S ATTORNEY]: Correct.

Furda's attorney was also aware that, under the terms of the order, Furda could not purchase a firearm, and that this prohibition would remain in effect until and unless the order was overturned on appeal. Accordingly, Furda's attorney testified that, although he believed Furda was not ineligible to purchase additional firearms, "[he] would have cautioned [Furda] against it."

At the trial's conclusion, the court found as a "first-level fact" that Furda knew that the court had made a finding that Furda had been committed to a mental institution, and that the Denial Order was still in effect at the time Furda completed the firearms application. Accordingly, "the false statement was not the result of confusion or an honest mistake." Rather, Furda knew that his answer to Question 8 was false and he "attempted to deceive the Maryland State Police in answering Question 8 falsely because he wanted a gun and he didn't want to put down the truth." [9] Therefore, the court convicted

---

**9.** The court was particularly troubled by the fact that Furda had taken his motion for reconsideration to the gun store, but did not reference it in his application in the interests of full disclosure:

[O]ne way to have truthfully filled out the application was that, when you got to question 8, you could instead of saying "yes" or "no," you could say, "see footnote." The footnote says, "This is what [the judge] said. I think she's wrong. In fact, I've appealed her all the way to the Supreme Court of Mars. But here are the facts. So I'm not making a false statement and I'm not misleading anybody[.]"

The court later explained that even if there was no footnote section to the application, Furda could have attached his motion for reconsideration to the application:

[P]robably nobody could have stopped him from [attaching the motion for reconsideration]. I know there may not be a section on it that says "Please write footnotes here," but just like there's no such statement on U.S. Income Tax Returns or other statements made to federal agencies, people have been doing it for years to avoid what we have here. It's not rocket science. It's not novel. It's not hindsight by 20/20. It's people are careful when you make a statements to a federal or state agency that it's scrupulously true.

Furda of perjury and false information in a firearm application. The court then sentenced Furda to ten years incarceration, with all but five years suspended.

In two separate matters, Furda appealed both his convictions and the denial of his motion for reconsideration to the Court of Special Appeals. The intermediate appellate court rendered its decision in the protective order case on July 2, 2010, and in the perjury case four days later. In the former, the intermediate appellate court held that Furda had not been "committed" to a mental institution as that term was contemplated in 18 U.S.C. Section 922(g)(4), and thus that the circuit court erred by denying Furda's motion for the return of his weapons on that ground. *See Furda v. State*, 193 Md.App. 371, 997 A.2d 856 (2010) (*"Furda I "*). Regardless, in the latter case, the Court held that Furda was still guilty of perjury and providing false information in a firearm application because he knew that his answer to Question 8 was contrary to the Denial Order, which was still in effect when he completed the application. *See Furda v. State*, 194 Md.App. 1, 1 A.3d 528 (2010) (*"Furda II "*). Thus, the Court of Special Appeals affirmed his convictions.

## DISCUSSION

### I. The Alleged Ambiguity Of Question 8

Furda first attacks the language of Question 8 ("Have you ever been adjudicated mentally defective or have you been committed to a mental institution?"), arguing that it is impermissibly ambiguous and cannot serve as the basis for his convictions. His challenge is two-pronged. The first ambiguity, he contends, lies in the compound nature of Question 8, which permits a legitimate "answer 'no' to [the question of] whether a person has ever been adjudicated a mental defective *or* whether a person has been committed to a mental institution." (emphasis in original). Second, he claims that the word "committed" is susceptible to multiple meanings, de-

pending on whether federal,[10] State,[11] or local law applies. Furda emphasizes that the trial court determined that he was a prohibited person under federal and local law, but not under State law, and the application was a State form for the purchase of firearms. Accordingly, he believes that his answer "no" to the commitment portion of Question 8 was a true statement. We take each of these contentions in turn, starting with a general review of some Federal perjury cases involving responses to allegedly ambiguous questions.

"[A] prosecution for a false statement ... under the perjury statutes cannot be based on an ambiguous question where the response may be literally and factually correct." *United States v. Vesaas*, 586 F.2d 101, 104 (8th Cir.1978) (citing *Bronston v. United States*, 409 U.S. 352, 362, 93 S.Ct. 595, 602, 34 L.Ed.2d 568 (1973)). Yet, "[a]s a general rule, the fact that there is some ambiguity in a falsely answered question will not shield the [defendant] from a perjury or false statements prosecution." *United States v. Ryan*, 828 F.2d 1010, 1015 (3d Cir.1987). An inquiry is not rendered impermissibly or fundamentally ambiguous merely because "the words used in the question have different meanings in differ-

---

10. Although Congress has not defined "committed to a mental institution," as it is used in 18 U.S.C. Section 922(g)(4), our Court of Special Appeals established some minimum requirements for the term after examining "the legislative history, federal regulations passed pursuant to the statute, and case law interpreting the statute[.]" *Furda v. State* (*"Furda I"*), 193 Md.App. 371, 405, 997 A.2d 856, 876 (2010). Ultimately, that Court concluded that the term "committed" applied to "situations in which, at the very least, the patient has been afforded an evidentiary hearing, held by either a court or a hearing officer; the patient or the defendant has a right to appear and the right to counsel; and findings are made by the factfinder, based on competent medical evidence." *Id.* at 410, 997 A.2d at 879.

11. Under State law, an individual is prohibited from possessing a regulated firearm if that person "has been confined for more than 30 consecutive days to a facility ..., unless the person has a physician's certificate that the person is capable of possessing a regulated firearm without undue danger to the person or to another[.]" Md.Code (2003), § 5–133(b)(7) of the Public Safety Article. Here, there is no dispute that Furda was not confined for more than 30 consecutive days to a mental health facility.

ent situations[.]" *United States v. Lighte,* 782 F.2d 367, 375 (2d Cir.1986). Rather, the question is fundamentally ambiguous when "it [is] entirely unreasonable to expect that the defendant understood the question[ ] posed to him." *United States v. Slawik,* 548 F.2d 75, 86 (3d Cir.1977). Moreover, "[a] defense to a charge of perjury may not be established by isolating a statement from context, giving it in this manner a meaning entirely different from that which it has when the testimony is considered as a whole." *United States v. Bonacorsa,* 528 F.2d 1218, 1221 (2d Cir.1976). Accordingly, a court should "consider the context of the question and [the defendant's] answers, as well as other extrinsic evidence relevant to [the defendant's] understanding of the questions posed in the Form." *United States v. Culliton,* 328 F.3d 1074, 1079 (9th Cir.2003). Whether a question is fundamentally ambiguous is a matter of law that courts review *de novo. See Lighte,* 782 F.2d at 375 ("questions posed may be insufficient as a matter of law to support the perjury conviction ... [and] a reviewing court may override a jury determination."). We apply these cases in assessing Furda's challenges to Question 8.

■ With respect to the compound nature of a question, we have found several Federal cases holding that a compound question is not always fundamentally ambiguous. In *United States v. Heater,* 63 F.3d 311 (4th Cir.1995), the Fourth Circuit affirmed the defendant's perjury conviction based upon a false declaration he made to a grand jury regarding his use of marijuana. On appeal, the defendant attacked the question at issue—whether he had ever bought *or* sold marijuana—arguing that it was a "misleading double question[.]" *Id.* at 327. The Court of Appeals rejected this argument, saying that the defendant "dramatically overstates the complexity of the question[ ] to which he had to respond." *Id.* The Court reasoned that, "put in context, the question[ ] [was] understandable and plainly clear enough to elicit informed and intelligent responses." *Id.* (quoting *United States v. Yasak,* 884 F.2d 996, 1002 (7th Cir.1989)). Thus, there was no fundamental ambiguity that would have required the court to remove the question from the jury's consideration. *Id. See*

*also United States v. Bollin,* 264 F.3d 391, 411 (4th Cir.2001) (question of "whether [defendant's coconspirator] 'directed, coordinated, or orchestrated' the disbursement of funds to the investors" was not fundamentally ambiguous because all three possibilities "refer to some conduct on [the co-conspirator's] part intended to bring about the repayment of investors."). Applying similar reasoning in this case, we conclude that the question was not impermissibly ambiguous just because an applicant was required to answer "yes" if either of the two events had occurred ("adjudicated a mental defective" or "committed to a mental institution"). Underlying Furda's argument for ambiguity is the assumption that, if the answer to one subpart is "no," the applicant may legitimately answer "no" to the full compound question. Yet nothing in the wording of the question suggests or even permits this inter-pretation. The word "or" is not ambiguous: it means that if either of the events have occurred, then the applicant's answer should be "yes." We see no ambiguity in the question arising from its compound nature.

■ We next consider Furda's second contention—that the word "committed" is susceptible to multiple meanings, de-pending on whether federal, state or local law applies. Again, federal case law is helpful. Federal courts have held that a term is not impermissibly ambiguous simply because, when considered in isolation, it may have two plausible meanings. In *United States v. Camper,* 384 F.3d 1073 (9th Cir.2004), the Ninth Circuit Court of Appeals affirmed the false statement conviction of a defendant who, on an employment criminal history questionnaire, answered "no" to the question "Have you been convicted ... [of] [u]nlawful possession, use, sale, distribution or manufacture of an explosive or weapon[,]" even though he had pleaded guilty to the misdemeanor charge of "carrying a loaded firearm in public without being a registered owner...." *Id.* at 1074. The Court recognized that, although there were two "plausible meanings" to the phrase "unlawful possession," extrinsic evidence shed light as to "which con-struction [the defendant] placed on the question." *Id.* at 1078. Specifically, when he had pleaded guilty to carrying a loaded

firearm, he had "used the phrase 'unlawfully possessed' to refer to the offense[.]" *Id.* Thus, the Court reasoned that a "reasonable trier of fact could conclude ... that the questionnaire asked, and [the defendant] answered, a question about convictions for possessing a gun in an unlawful manner[,]" meaning that there was sufficient evidence to support the conviction. *Id.*

There is comparable extrinsic evidence in this case. The circuit court's order referenced federal and local law. Furda's own lawyer testified that he had advised Furda, and Furda "[u]nquestionably" understood, that the judge had "ruled that he was a prohibit[ed] person because he was involuntarily committed[.]" Furda's motion for reconsideration challenged the court's finding that he had been "committed" under federal and local law. He brought that motion to the gun store, and engaged in an extended conversation with the store's owner, referencing the motion. Had Furda believed that Question 8's use of the word "committed" was somehow different than the court's use of that term in its order, then there would have been no need to bring and discuss his motion for reconsideration. This is sufficient evidence to support the trial court's finding that, when he went to Gilbert's Guns, Furda understood that the Denial Order and application used a similar definition of the term "commitment," that the Denial Order was still in effect, and that "the false statement was not the result of confusion or an honest mistake."

Furthermore, it is no defense that the circuit court's findings were made pursuant to Federal and local law, and not the Maryland statutory definition. *See* Md.Code, Public Safety Article, § 5–118 and § 5–133(b)(7) (defining "commitment" as when a person "has been confined for more than 30 consecutive days" to a mental institution). Question 8 was not limited to "commitment" under Maryland State law, and was phrased broadly enough to include multiple definitions of the term "commitment." Indeed, it is the question that precedes question 8 which limits its inquiry to the state-law prohibition in section 5–133(b)(7),[12] specifically asking: "Have you ever

---

12. This section bars a person from possession of a regulated firearm if the person "has been confined for more than 30 consecutive days" to a

spent more than 30 consecutive days in any medical institution for treatment of a mental disorder or disorders?" Question 8, which follows this narrower question, must be interpreted to ask for different information.

As further evidence that Furda was required, under the circuit order, to answer "yes" on the application, the language of Question 8 tracks, almost *verbatim,* the language of 18 U.S.C. Section 922(g)(4). *Compare* 18 U.S.C Section 922(g)(4) (a prohibited person is someone "who has been adjudicated as a mental defective or who has been committed to a mental institution") *with* Question 8 ("Have you ever been adjudicated mentally defective or have you been committed to a mental institution?"). Furda was well aware of the Federal law. He attended the hearing on his motion to recover firearms, and thus was aware of the State's contention that he had been "committed" within the meaning of the Federal statute. The Denial Order was issued before Furda went into Gilbert's Guns, and there is no dispute that Furda knew of the contents of that order and discussed its significance with the owner of the store before completing the firearm application. The Denial Order described Furda as a prohibited person under 18 U.S.C. Section 922(g)(4) because he had "been involuntarily *committed* to a mental institution[.]" (emphasis added). Once again, this language tracks exactly the language of Question 8, leading any reasonable person to conclude that the term "committed" had the same meaning in the application as it did in the federal statute. If Furda had any doubt, he should have disclosed the Denial Order in conjunction with his answer.

In sum, we agree with the State's averment that

These facts yield the reasonable inferences that: (1) Furda knew that federal and state statutory schemes evince concern about gun ownership by people with mental illness; (2) Furda knew that the federal definition of commitment is

---

mental facility "unless the person has a physician's certificate that the person is capable of possessing a regulated firearm without undue danger to the person or to another[.]"

broader than the Maryland definition; (3) Furda knew that the application sought disclosure of any commitment within the federal law definition; and (4) Furda knew that he had been deemed committed, at least within the meaning of federal law[.]

Ultimately, our examination of all of the circumstances of this case leads us to the conclusion that Question 8 is not fundamentally or impermissibly ambiguous and can serve as the basis for Furda's convictions.

## II. The Effect of Appellate Reversal of the Denial Order

 Furda also challenges his convictions on the grounds that his answer to Question 8 was truthful in hindsight, in light of the Court of Special Appeals's reversal of the original order denying Furda the return of his firearms. In essence, Furda claims that the intermediate appellate court's decision in *Furda I* should be applied retroactively to the time he completed the firearm purchase application.

In Maryland, a person "may not knowingly give false information or make a material misstatement in a firearm application for a dealer's license." Md.Code (2003), § 5–139(a) of the Public Safety Article ("PS"). Additionally, a person commits perjury if he "willfully and falsely make[s] an oath or affirmation as to a material fact … in an affidavit required by any state, federal, or local law[.]" Md.Code (2002, 2007 Cum. Supp.), § 9–101 of the Criminal Law Article ("CL"). The Maryland Criminal Pattern Jury Instructions ("MPJI–CR") address the requirements of proving perjury in an affidavit as follows:

In order to convict the defendant of perjury by affidavit, the State must prove:

(1) that the defendant declared under the penalty of perjury that a written document was true;

(2) that the writing contained a false statement;

(3) that the false statement was given wilfully, rather than as a result of confusion or honest mistake;

(4) that the defendant knew the statement was false at the time it was given; and

(5) that the false statement was material, that is, it related to the reason why the affidavit was prepared.

MPJI–CR 4:26:1.

To support his claim that we should apply *Furda I* retroactively, so as to render his false answer to Question 8 a truthful statement, Furda cites numerous cases in which courts have retroactively applied decisions that create a new standard or strike down an existing law as unconstitutional. For example, Furda cites *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), a Supreme Court ruling that the provisions of the Federal Sentencing Guidelines were unconstitutional, and the application of that ruling by federal courts to cases where the defendant had already been convicted and sentenced, but that were still open on appeal. *See, e.g., United States v. Edwards*, 424 F.3d 1106 (D.C.Cir.2005) (applying *Booker* and remanding for a determination of whether the sentences for the defendant's convictions were the product of the court's independent, discretionary judgment, or the Federal Sentencing Guidelines). *See also Potts v. State*, 300 Md. 567, 577, 479 A.2d 1335, 1340–1341 (1984) ("as a general rule, a new constitutional decision applies to all cases pending on direct appeal.") (citing *United States v. Johnson*, 457 U.S. 537, 562, 102 S.Ct. 2579, 2594, 73 L.Ed.2d 202 (1982)).

Yet, these cases are inapposite because they do not involve the question of whether a defendant made an intentionally false statement under oath, a crime that requires that we focus on Furda's intent and the facts as they existed *at the time he filled out the application.* In a more analogous case, *United States v. Seidenberg*, 420 F.Supp. 695 (D.Md.1976), the United States District Court for the District of Maryland upheld a defendant's convictions for making a false statement in connection with the acquisition of a firearm and unlawful receipt of a firearm by a person who has been committed to a mental institution, even though his prior commitment to a mental institution may have been constitutionally infirm. The

defendant argued that, because his commitment was unconstitutional, it "must be treated as nonexistent for purposes of any alleg[ations of false statements]." *Id.* at 696. The District Court disagreed, relying on the nature of a false statement charge:

> [The statute] compels disclosure of all convictions which have not been set aside, whether ultimately shown to have been valid or not. That section penalizes [the defendant] for making a false statement. It penalizes him not for being a convicted felon, but for failing to tell the truth about the conviction. We think it apparent from the language employed that Congress intended to provide a scheme of regulation by compelling full and honest disclosure.

*Id.* at 697 (quoting *Cassity v. United States,* 521 F.2d 1320, 1323 (6th Cir.1975)). Likewise, Furda cannot justify a false statement on his application because of his lack of knowledge how the Circuit Court had disposed of his Motion for Reconsideration of the original Denial Order or that the Denial Order would be overruled on appeal. He was required to wait—either by deferring his application or by filing the application and disclosing the court order—until he had taken the necessary steps to discover the trial court's action on his reconsideration motion or to appeal the order if it had not been modified on reconsideration.

 It is settled law that a court's decision is binding on the parties until it is overturned. *See Roessner v. Mitchell,* 122 Md. 460, 466, 89 A. 722, 723 (1914) ("If the judgment of the Court is erroneous, the remedy is by appeal, and until reversed on appeal, the judgment is binding on the parties to the suit."); *see also Donner v. Calvert Distillers Corp.,* 196 Md. 475, 489, 77 A.2d 305, 310 (1950) (Although erroneous, a court order "must be obeyed until such time as it is stricken out on application, or reversed on appeal[.]"). As explained by the Supreme Court, "[i]t is beyond question that obedience to judicial orders is an important public policy."[13] *W.R. Grace &*

---

**13.** Indeed, if Furda disagreed with the Denial Order, he was free to—and did—challenge it on appeal. He was not at liberty, however, to

*Co. v. Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). Consequently, a judicial determination and the findings that it is predicated upon constitute "the truth" *until* invalidated.[14] *Cf. Da Silva v. Musso,* 76 N.Y.2d 436, 560 N.Y.S.2d 109, 559 N.E.2d 1268, 1270 (1990) ("It is elementary that a final judgment or order represents a valid and conclusive adjudication of the parties' substantive rights, unless *and until* it is overturned on appeal.") (emphasis added). Here, the Denial Order, which was still in effect at the time Furda completed the application, established the relative truth concerning Question 8 at that time. Thus, as the intermediate appellate court concluded, Furda "was obligated to answer 'Yes' to Question 8 until such time as that court's finding of commitment was set aside." *Furda II,* 194 Md.App. at 47, 1 A.3d at 555. Instead, Furda answered "No" to Question 8, rendering his statement false.

To be sure, as the Court of Special Appeals' decision in *Furda I* makes clear, Furda had a valid, ongoing dispute with the circuit court's Denial Order. Furda, however, was required to make that challenge through the appropriate channels, and was not entitled to engage in self-help and enforce his rights extra-judicially by making his case to the owner of Gilbert's Guns. *Cf. Hill v. State,* 419 Md. 674, 20 A.3d 780 (2011) (although Petitioners' sentences may have been illegal, they were required to challenge those sentences in the courts and could not engage in self-help by failing to report for imprisonment). Thus, up and until Furda succeeded on ap-

---

engage in self-help by pursuing his permit application without, at the very least, disclosing that order. *See Walker v. City of Birmingham,* 388 U.S. 307, 320–21, 87 S.Ct. 1824, 18 L.Ed.2d 1210, (1967) (In the "fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his religion.... [R]espect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom.").

14. Conceivably, if the appellate courts had, in the end, affirmed the Denial Order's finding that Furda had been "committed," Furda would have been deemed "committed" by law, even though he continued to insist otherwise.

peal, the court's finding of "commitment" remained valid and Furda was required to answer Question 8 with a "yes."

## III. Furda's Intent

Furda contends that he did not have the subjective intent necessary to support a perjury conviction, explaining that he did not knowingly and willfully lie on the application because he truly believed that the Denial Order was wrong. Although the perjury and false information statutes employ two different terms—willfully and knowingly—to describe the requisite state of mind of the defendant, this Court has stated that the two words are of "similar import" and are "the same in substance and effect." *Greenwald v. State*, 221 Md. 235, 244, 155 A.2d 894, 899 (1959). "To be willful, the false oath must be deliberate and not the result of surprise, confusion or bona fide mistake[.]" *Myers v. State*, 303 Md. 639, 640 n. 1, 496 A.2d 312, 312 n. 1 (1985). In conducting our inquiry, we are mindful that the trial judge here did not find Furda to be a credible witness: "The Court also finds that Mr. Furda did not testify candidly when he testified during his trial. He told me then, he told me now, he was not aware of [the Denial Order]. To be blunt, I do not believe him[.]" We give "great deference to a hearing judge's . . . credibility determinations" because "credibility determinations are to be made by trial courts, not appellate courts." *Longshore v. State*, 399 Md. 486, 520, 924 A.2d 1129, 1149 (2007).

A review of the record reveals sufficient evidence to support the trial judge's conclusion. Before walking into Gilbert's Guns, Furda had been made aware of the Denial Order through his counsel. As Furda's lawyer explained to him, that order described Furda as a prohibited person under 18 U.S.C. Section 922(g)(4) because he had "been involuntarily *committed* to a mental institution[.]" (emphasis added). We reiterate, this language tracks exactly the language of Question 8, leading any reasonable person to conclude that the term "committed" had the same meaning in both the Denial Order and the firearm application. In addition, Furda signed his name under the certification "I am not prohibited by law from

purchasing or possessing a regulated firearm[,]" even though he knew there was a judicial finding to the contrary still in effect.[15]

Perhaps the most damning evidence of Furda's intent was that, after conferring with his attorney and the owner of Gilbert's Guns on the issue of whether the Denial Order prevented him from purchasing a firearm, he failed to attach or otherwise make reference to his motion for reconsideration in his application. We agree with the logic of the Sixth Circuit that the federal regulatory scheme prohibiting false statements are designed to compel "full and honest disclosure[,]" *see Cassity v. United States,* 521 F.2d 1320, 1323 (6th Cir. 1975), and conclude that this reasoning is equally applicable to Maryland's scheme. Clearly, Furda's disclosure did not measure up to that standard.

We hold that the trial court did not err in finding that, by answering "No" to Question 8, Furda "knowingly [gave] false information . . . in a firearm application" and "willfully and falsely [made] an oath or affirmation as to a material fact[.]" Accordingly, we affirm his convictions for false information and perjury.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

**15.** Furda did ask the court to reconsider its refusal to return his guns. Yet, even if Furda was not aware that the court had denied his motion when he was completing the application, the result is the same. At best, this means that Furda was aware that the Denial Order was still in effect, and that his answer to Question 8 "was directly contrary to [that] ruling." *Furda II,* 194 Md.App. at 33, 1 A.3d at 547.