*State of Maryland v. Karen Campbell McGagh*, No. 12, September Term 2020.  Opinion by Hotten, J.

**CRIMINAL LAW – STANDARD OF REVIEW – SUFFICIENCY OF EVIDENCE – PERJURY –** Maryland Rule 8-131 provides that an appellate court will not set aside the judgment of a trial court on the evidence unless clearly erroneous, and reviewing courts shall defer to trial court's findings regarding the credibility of witnesses.  Appellate courts apply a *de novo* standard of review when a trial court's judgment on the evidence implicates the defendant's constitutional rights.  Following a bench trial, the trial court convicted the Respondent for perjury and making a false report to the police ("false report").  Respondent appealed the sufficiency of the evidence for her convictions to the Court of Special Appeals, which applied a *de novo* review to assess whether her convictions infringed upon Respondent's First Amendment right to petition the government.  The Court of Appeals held that Respondent's perjury and false report convictions did not warrant a *de novo* review.  Respondent did not raise any First Amendment challenges at trial, and even if Respondent had, the First Amendment does not protect perjurious speech.

**CRIMINAL LAW – SUFFICIENCY OF EVIDENCE – PERJURY – FALSITY –** The crimes of perjury and false report both require proof of falsity.  The State must satisfy the two-witness rule to establish falsity.  The two-witness rule requires either two witnesses testifying to the falsity of a statement or one witness testifying to the falsity of a statement with independent corroboration of equal weight to that of a witness.  The Court of Appeals held that a store's surveillance video may independently corroborate a witness's testimony to establish falsity.  The State charged Respondent with perjury and false report after the Respondent alleged that a salesman sexually assaulted her by cupping her breast and touching her inner thigh while purchasing a cellphone at a store.  The State satisfied the two-witness rule with the salesman's testimony that he did not recall cupping the Respondent's breast and touching her inner thigh and the store's surveillance video showing no occurrence of the alleged conduct.  The State also provided sufficient evidence to prove Respondent's intent in making a false statement to the police and the court.

**CRIMINAL LAW – SUFFICIENCY OF EVIDENCE – PERJURY – MATERIALITY –** Perjury and false report require the State to prove the materiality of willful and knowing false statements beyond a reasonable doubt.  The State presents sufficient evidence of materiality by showing a false statement that affects a legal decision or outcome.  The Court of Appeals held that a false statement that causes an officer to initiate an investigation and a commissioner to issue an arrest warrant satisfies the element of materiality under Maryland's false report and perjury statutes.

Circuit Court for Baltimore County
Case No. 03-K-17-003606
Argued: November 6, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 12

September Term, 2020

_____

STATE OF MARYLAND

v.

KAREN CAMPBELL MCGAGH

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: January 29, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Respondent, Karen McGagh, ("McGagh") was tried in the Circuit Court for Baltimore County for falsely accusing Glenn Trebay ("Trebay") of sexually assaulting her while patronizing a Verizon store. McGagh stated to a police officer and in a sworn criminal complaint that Trebay cupped her breast and touched her inner thigh. During a bench trial, the State admitted a surveillance video from the Verizon store that did not show Trebay touching McGagh as she claimed. The trial court convicted McGagh of perjury and making a false statement to police officer. McGagh received a sentence of ten years' incarceration for the perjury conviction, all but eight years suspended, with five years' supervised probation. McGagh also received a consecutive sentence of six months for the false report conviction.

McGagh appealed her convictions to the Court of Special Appeals. She argued that Petitioner ("the State") presented insufficient evidence to establish her convictions beyond a reasonable doubt. The Court of Special Appeals agreed and reversed the trial court. In its unreported opinion, the Court of Special Appeals raised, for the first time, the issue of whether McGagh's perjury conviction implicated the First Amendment, thereby triggering *de novo* review. The State duly appealed to this Court.

We granted *certiorari* to address the following questions:

1. Did [the Court of Special Appeals] err when, citing First Amendment and policy-based concerns, it applied a non-deferential, [*de novo*] standard of review to the legal sufficiency of the evidence to sustain Respondent's convictions for perjury and false statement?

2. Did [the Court of Special Appeals] err in finding the evidence insufficient to show willful and knowing falsity, and in finding that one witness's

testimony corroborated by surveillance video was insufficient to satisfy the [two-witness rule] for perjury?

3. Was the evidence legally insufficient to support Respondent's convictions for perjury and/or false statement because the evidence failed to show that the statements were material?[1]

We answer the first two questions in the affirmative, the third in the negative and shall reverse the judgment of the Court of Special Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Underlying Incident

On April 24, 2017, McGagh visited a Verizon store in Towson, Maryland to seek the repair of her broken phone. Glenn Trebay, a Verizon store employee, greeted her and escorted McGagh to his desk. Trebay discovered an outstanding balance on her account that prevented him from immediately replacing her phone. He tried contacting different departments to resolve the issue. After approximately two hours, McGagh purchased a new phone for over $800 and left the store. The store's video cameras captured the entire interaction without sound.

McGagh and Trebay provided starkly different depictions of their encounter. Trebay described McGagh as initially distraught and that she became increasingly agitated and upset by his inability to quickly repair or replace her phone. Trebay denied that any inappropriate behavior occurred. He later testified "[t]here was a distance between us . . .

---

[1] The Court of Special Appeals found sufficient evidence to satisfy the element of materiality, so the Respondent raised this question on conditional cross-petition.

2

the entire time." Trebay, in fact, spent much of the two-hour encounter sitting adjacent to McGagh, so he could share his work tablet's screen. The surveillance video also showed several instances where Trebay briefly touched McGagh's shoulder, elbow, and back of the arm. The final touch constituted a handshake between Trebay and McGagh before she left the store with a newly purchased phone.

McGagh found Trebay's behavior disturbing. She claimed that he attempted to sell her non-Verizon items, including a Fitbit,[2] a watch, and a cashmere sweater, and that he allegedly stored these unsanctioned items in his car. She testified that he smelled of alcohol. At one point, she claimed that Trebay held her SIM card and joked, "I've got your life in my hands now[.]"

During the encounter, the surveillance video reflected several customers coming in and out of the store. A nearby salesman spent several minutes attending to another customer and helped Trebay complete the phone transaction with McGagh after an hour and a half. McGagh claimed that the other salesman told her that Trebay's behavior was worse around college-age girls.[3]

---

[2] Fitbit refers to a brand of activity tracking devices, smart watches and other wearable technology. Wikipedia, the Free Encyclopedia, *Fitbit*, https://en.wikipedia.org/wiki/Fitbit (last visited Dec. 4, 2020), archived at https://perma.cc/83H8-QDK9.

[3] McGagh testified that she tried to get help from the other salesman to extricate herself from the prolonged interaction with Trebay. The court did not find McGagh's account credible:

[McGAGH]: I want him to help me, that's how I'm starting to signal him, to

(continued . . .)

3

After McGagh left the store, she called Verizon to complain about Trebay's unprofessional behavior. Verizon told Trebay not to come into work the next day, and eventually fired Trebay. On April 25, 2017, McGagh called the Baltimore County Police and Officer Heims took her statement. Officer Heims's body camera recorded the video and audio of the interaction. McGagh alleged that Trebay acted unprofessionally, and "he should never be around young women." She asked whether Trebay could get a "scary warning[]" from the police officer. Officer Heims responded, "I think there's going to be a little more than a scary warning, I can promise you that."

She also alleged Trebay touched her breast and inner thigh. The body camera footage showed McGagh demonstrating that Trebay touched her breast. Officer Heims suggested Trebay attempted to "cop a feel[]" and McGagh responded, "[b]ut that's exactly what it was . . . [t]hat's exactly what it was." McGagh continued, "[I]t was wrong, like

---

help me get out of there.

THE COURT: *By blowing a kiss?*

[McGAGH]: No, I put my hand on my mouth.

THE COURT: That's what happened.

[McGAGH]: But that, that's how, that's, that's, I don't blow kisses. I mean, I'm just being straight. I, that's not, that's not what I do.

THE COURT: But you, you agree, that's exactly what it looks like.

[McGAGH]: Well, if you're, that's how I talk.

*McGagh*, slip op. at 20 (emphasis added).

4

should he go to prison?  I don't know, but he should never work around women and I felt really dirty, I didn't sleep last night and it's a horrible feeling."[4]  Officer Heims told McGagh he would document the alleged sexual assault as a "fourth degree sex offense." He presented McGagh with the options of filing criminal charges and/or obtaining a peace order.

Later that evening, McGagh filed a sworn "A[pplication for] S[tatement of] C[harges]" against Trebay for "[sexually assaulting her]" in the District Court for Baltimore County.  In the middle of the ten-page statement, McGagh alleged Trebay "leaned in, and in a flash cupped [her] breast with his hand[]" and "leaned in and rubbed [her] upper thigh."  She also alleged that he called her at home and feared he may assault her again.  McGagh signed the first page affirming "under the penalties of perjury that the contents of this Application are true to the best of my knowledge, information and belief." The first page also states that it may "lead to the arrest of the above named Defendant[.]" McGagh signed each subsequent page.

The District Court Commissioner authorized an arrest warrant for Trebay, following a review of McGagh's statement of charges.  The police arrested Trebay at his home. Trebay later testified in his victim statement that he felt confused and embarrassed by his

---

[4] Unexpectedly, a representative from Baltimore Gas and Electric Company knocked on Ms. McGagh's door inquiring about an unpaid $2,500 bill.  Officer Heims told the representative to come back at a different time.  The trial judge later remarked on the interaction as indicative of McGagh's deceitful pattern of behavior.

arrest, which was made in front of his elderly father and neighbors.[5]  He spent several hours in custody before the State dropped the sexual assault charges.  Following an investigation, the State charged McGagh with perjury and making a false statement to police.

<b>Legal Proceedings</b>

## A. Circuit Court Proceeding

McGagh elected a bench trial, which occurred on December 13 and 14, 2017, in the Circuit Court for Baltimore County.  The State admitted the Verizon surveillance video, which showed that Trebay did not touch McGagh's breast and inner thigh, though it showed Trebay briefly touching McGagh at various points throughout the encounter. McGagh took the stand in her own defense.  She admitted the video did not show Trebay touching her breast and inner thigh:

> [DEFENSE COUNSEL]:  Now, when you, you've since watched the video?
>
> [McGAGH]:  Yes.
>
> [DEFENSE COUNSEL]:  Of course, and you see that he doesn't particularly, as your statement of charges says, cup your breast on the video.
>
> [McGAGH]:  Yes.
>
> [DEFENSE COUNSEL]:  Can you explain to her Honor why you wrote that in your statement of charges?
>
> [McGAGH]:  I was trying to, I was, I used the wrong word.  I was confused, I used the wrong word, you know, is, you could, is it a cup, is it a feel, is it a brush, is it a touch, it's that sort of, you know, you know it's different than an elderly man, you know it's different, you know you feel violated, you

---

[5] Trebay further elaborated that he experienced "loss of wages, loss of integrity, loss of respect, having my neighbors see me shackled and taken away at 7:00 [am] in the morning from the house I've lived in thirty, for thirty-nine years in Roland Park."

know you feel, you know that it's not okay.  You know that there is a power, he's got my phone, he's got pictures of my nieces, he's got pictures of my –

THE COURT:  Well, show me where there is a brush or a cupping or a touching or anything of your breast.

[McGAGH]:  That's how it felt.

THE COURT:  Well, you just said it happened, so I am happy, believe me, because I want to make the right decision, you show me on that video because I sat, I sat here and was glued to, literally over two hours of watching paint dry.  So, . . . we've got the CD, just show me.  You show me where he either touches the, upper inside of your thigh or he comes even near your thigh.

[McGAGH]:  It does.

THE COURT: Because you indicated several times to that police officer that it is the upper inside of your left thigh.  [Trebay], I don't remember, being on your left side.  He was on the right side.  So, if I missed it, I truly, genuinely, authentically, want you to show me what I missed.  But you're saying that's what I thought happened and you're saying that's what happened, are two completely different things.

[McGAGH]: That's what I thought happened.

THE COURT: *Okay.  So there's no point in looking anymore because it's not there.  You concede that point.*

[McGAGH]: *I can.*

* * *

THE COURT: Okay.  So, then you, what you told the manager and what you told Verizon is the same as what you told the police officer?

[McGAGH]: To the best of my recollection.

THE COURT: Which turns out not to be true.  Is that where we are?

[McGAGH]: It's what I remembered.

THE COURT: Okay.

[McGAGH]: It's what I felt.  It's, that's –

7

THE COURT: *But it's not true.*

[PROSECUTOR]: *Judge, just for the record, (inaudible) that the Defendant is nodding yes.*

(Emphasis added).

The trial court found no evidence to support McGagh's accusations. The trial court

convicted McGagh of perjury[6] and giving a false statement to police:[7]

I find beyond a reasonable doubt that Ms. McGagh perjured herself and that she gave a false statement to Officer Heims. *I find that she intentionally lied.* And not about everything, that is a many page statement of charges. Many of the things in the statement are true, but *the essential, critical facts are untrue. It is completely and totally untrue that Mr. Trebay cupped Ms. McGagh's breast.* It, *it's not even a close call.* He didn't cup her breast, he

---

[6] Md. Code Ann., Criminal Law ("Crim. Law") § 9-101 provides in pertinent part:

(a) A person may not *willfully* and *falsely* make an oath or affirmation as to a *material fact*: (1) if the false swearing is perjury at common law; (2) *in an affidavit required by any state, federal, or local law*; (3) in an affidavit made to induce a court or officer to pass an account or claim; (4) in an affidavit required by any state, federal, or local government or governmental official with legal authority to require the issuance of an affidavit; or (5) in an affidavit or affirmation made under the Maryland Rules.

\*\*\*

(Emphasis added).

[7] Crim. Law § 9-501 states in pertinent part:

(a) A person may not make, or cause to be made, a statement, report, or complaint that the person *knows to be false as a whole or in material part, to a law enforcement officer of the State*, of a county, municipal corporation, or other political subdivision of the State, or of the Maryland-National Capital Park and Planning Police *with intent to deceive and to cause an investigation or other action to be taken as a result of the statement*, report, or complaint.

\*\*\*

(Emphasis added).

8

didn't brush her breast, he did not touch her breast or her chest in any way. *He never got close to her upper inner thigh.* I can't say, having looked at two plus hours of video, that I know where his hands were all the time, but my, I feel like they were, he's a, as he said, a garrulous guy, he talks with his hands and I saw his hands in the air a lot but, I'll tell you this*, he wasn't in a position to reach across from where he was and rub her or touch her upper inner thigh on the left hand side, which is what Ms. McGagh told Officer Heims happened.* I saw it as she showed him on the video, the body camera, I guess is what I mean to say. *And I don't believe that she was confused about what happened.* It's *far more likely that she wanted Mr. Trebay fired and the story started and was sort of like that proverbial snowball going down the hill, it just got more ingrained and more elaborate, but it was false.* And so, that's my decision.

(Emphasis added).

On March 8, 2018, the trial court sentenced McGagh to ten years' incarceration for the perjury conviction, all but eight years suspended, with five years' supervised probation. The trial court also sentenced McGagh to six months' incarceration for false report to be served consecutively. The trial court based the sentence on an examination of the evidence, McGagh's behavior before and during proceedings, and a pattern of disregarding the law:

> I don't think any one of us has ever seen a case like this before and I'm sure [defense counsel] will agree, we've never, as [the prosecutor] mentioned, never seen a pre-sentence investigation like this or a psyche evaluation like this. I obviously need to consider, in my decision making, rehabilitation, punishment and public safety.
>
> ***
>
> [T]his would include her history of deceitfulness, consistent irresponsibility to honor financial obligations and lack of remorse. . . . During this investigation, she continued to make statements minimizing her own actions and instead, blaming the victim, the Judge and her own attorney. . . . [T]he pre-sentence investigation, again, . . . indicates that it's been suspected that Ms. McGagh continues to drive on a suspended license. I was shocked by the number of just traffic violations, just a, just a consistent unrelenting inability or disregard [] for the law. As though it just does not apply to her . . . Ms. McGagh has been involved in criminal and traffic proceedings in

9

which she has benefited from lenient dispositions.[8]  Regardless of these privileges, she has continued to avoid hearings by numerous failing to appears and not fulfilling her financial obligations in paying fines and costs, as well as financial liens against her.

The trial court found that falsehoods reflected in McGagh's background followed "a lifelong pattern of deceitfulness, manipulative behavior and a narration of depicting herself as the victim."  The trial court highlighted a revealing moment of intentional deceit when McGagh told Dr. Kohn, the doctor assigned to her pre-sentence psychiatric evaluation, that "she knows how to play the game and what to say."  The court explained that Mr. Trebay was not the only victim in this case:

> I believe that the police officer who was pulled away from his work and summonsed to the home and lied to, he was very sympathetic to what Ms. McGagh was telling him.  And offered her options. . . . [w]ouldn't he think the next time he's called to someone's house and there's the complaint of a sexual assault, won't he remember Ms. McGagh. . . . The next person who actually makes a complaint to the police, they're victims and I will tell you the justice system is a victim.  We only, this delicate, fragile system only works because we depend on people to have their word mean something. . . . *I have no doubt that had there not been video, Mr. Trebay would be in jail because a jury would say why would she lie about this? . . . So, I think, not only Mr. Trebay, not only the Commissioner, not only the police officer . . . but the entire system brought to its knees because we, as a system, may have failed Mr. Trebay if there wasn't that video.*

(Emphasis added).  The trial court justified why its eight years and six months sentence exceeded the sentencing guidelines:

> Those [sentencing] guidelines do not take into account these facts and all of these victims and all of these lies and this history of dishonest and

---

[8] In October 2015, McGagh was convicted for theft after the court found her "to be not telling the truth."  Before this proceeding, McGagh was on probation and had an outstanding restitution balance of $13,000.  McGagh is also pending trial in a different case for allegedly defrauding four individuals.

10

manipulative [] actions that show a complete and total disregard for the other humans that are walking this path.[9] . . . I think this is one of the most serious and truly despicable crimes that I have witnessed, when you consider the ripples of the damage that [has] been caused.

McGagh filed a timely appeal to the Court of Special Appeals, arguing the evidence was legally insufficient to sustain either the conviction for perjury or making a false statement to police.

## B. Opinion of the Court of Special Appeals

In a 2-1 decision, the Court of Special Appeals reversed the trial court and held that the State provided insufficient evidence to support McGagh's convictions. The court acknowledged the ordinary standard of review for sufficiency of evidence issues "ask[s] whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McGagh v. State*, No. 408 September Term 2018, slip op. at 2 (Md. Ct. Spec. App. Feb. 4, 2020) (quoting *Breakfield v. State*, 195 Md. App. 377, 392, 6 A.3d 381, 389 (2010)). The court reasoned that the facts of the instant case implicated McGagh's First Amendment right to petition the government for legal redress. The court cited two federal circuit court cases that held filing of a criminal complaint and reporting a sexual assault to police fall under the First Amendment's protected speech. *Entler v. Gregoire*, 872 F.3d 1031, 1043 (9th Cir. 2017) (holding "that both the filing of a criminal complaint

---

[9] In the sentencing hearing, the State informed the court that Trebay would have faced up to eleven years' imprisonment for a second degree and fourth degree sexual assault.

11

by a prisoner, as well as the threat to do so, are protected by the First Amendment, *provided they are not baseless*") (emphasis added); *Meyer v. Bd. of Cty. Comm'rs of Harper Cty., Okla.*, 482 F.3d 1232, 1243 (10th Cir. 2007) (concluding that "filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right").

According to the court, the implication of McGagh's First Amendment rights "arguably trigger[ed]" an "independent examination of the whole record" under the Supreme Court's ruling in *New York Times v. Sullivan*, 376 U.S. 254, 285, 84 S. Ct. 710, 728 (1964). *McGagh*, slip op. at 4. Even though McGagh did not raise any First Amendment claims, the court concluded it could not adequately address the sufficiency of evidence issue without reviewing the record *de novo*.

Under that *de novo* review, the court held that the State presented insufficient evidence to establish McGagh's guilt beyond a reasonable doubt. The court noted that the perjury and false report statutes contain the same essential elements of making a material, willful and knowing, false statement. Specifically, the court observed that materiality requires that the alleged false statement to be "capable of affecting the decision in the matter" and that willful falsity requires that the defendant intentionally provide the false statement instead of through confusion or reasonable mistake. *McGagh*, slip op. at 21-22. The court disposed of the materiality element with little discussion. It found McGagh's claim of sexual assault "was an essential basis for . . . the ordering of Trebay's arrest." *Id.* at 22. This outcome satisfied the materiality component of the perjury and false report charges.

12

Although the court determined that the materiality component was met, the court found insufficient evidence for willful falsity. The court acknowledged that in *Brown v. State*, 225 Md. 610, 616-17, 171 A.2d 456, 459 (1961), we relaxed the two-witness rule that traditionally applied in perjury cases to allow a conviction of perjury to stand if the testimony of "one witness can be corroborated by circumstances proved by independent testimony."

However, the court concluded that the Verizon store video did not amount to a second witness under *Brown*'s reasoning. According to the intermediate appellate court, the video left too many unanswered questions regarding McGagh's emotional state, Trebay's threatening demeanor, the substance of their conversation, and whether the parties exchanged any words in response to the captured physical contact. The court explained that an audio component to the video could have better elucidated the issue of whether McGagh incurred any trauma during the counter, which the court noted can impede accurate memory recall. *McGagh*, slip op. at 24. Accordingly, the court held that while McGagh's accusations harmed Trebay, the evidence did not show willful falsehood and reversed her convictions.

The dissent asserted that the majority erred by applying a *de novo* standard of review. The dissent noted that the duty of a reviewing court is not to "'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt'; rather, the duty of the appellate court is only to determine 'whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

13

essential elements of the crime beyond a reasonable doubt.'" *McGagh*, slip op. at 1 (Meredith, J., dissenting) (citations omitted).

The dissent pointed out that neither the Court of Appeals nor the Court of Special Appeals has departed from this standard in previous cases concerning the sufficiency to support evidence of a perjury conviction. *Furda v. State*, 421 Md. 332, 353, 26 A.3d 918, 930-31 (2011) ("[W]e are mindful that the trial judge here did not find Furda to be a credible witness: 'The Court also finds that Mr. Furda did not testify candidly when he testified during his trial. He told me then, he told me now, he was not aware of [the Denial Order.] To be blunt, I do not believe him[.]' We give great 'deference to a hearing judge's . . . credibility determinations' because '*credibility determinations are to be made by trial courts, not appellate courts*.'") (emphasis added) (quoting *Longshore v. State*, 399 Md. 486, 520, 924 A.2d 1129, 1149 (2007)); *see also Mason v. State*, 225 Md. App. 467, 475, 126 A.3d 129, 133 (2015) (noting in a perjury bench trial that "[w]e defer to the fact-finder's decisions on which evidence to accept and which inferences to draw when the evidence supports differing inferences. In other words, we give deference to all reasonable inferences [that] the fact finder draws, regardless of whether . . . [we] would have chosen a different reasonable inference.") (citations omitted).

Even applying a *de novo* standard of review, the dissent found sufficient evidence to uphold the judgments of conviction entered by the trial judge. Specifically, the dissent noted that Trebay denied sexual contact with McGagh during his testimony, and that Verizon's surveillance video corroborated his testimony because it showed no touching

between Trebay and McGagh that would have constituted impermissible sexual contact under Maryland's criminal statute.[10] The dissent also pointed out that McGagh admitted during her testimony that Trebay did not touch her in the manner she alleged in her statement to police and the charging document.

The dissent criticized the majority for disputing the trial court's finding that McGagh lacked credibility. The dissent observed that appellate courts must defer to trial court's findings of fact and assessment of the credibility of witnesses, even when conducting a *de novo* review on the law. The dissent commented that, according to the trial court, the credibility determination was not close in this case, and that the trial judge rejected McGagh's account in light of the evidence. Finally, the dissent emphasized that "boorish" or "creepy" behavior does not amount to sexual assault, let alone permit false oaths to withstand judicial scrutiny. *McGagh*, slip op. at 6 (Meredith, J., dissenting).

On June 5, 2020, this Court granted the State's petition and McGagh's conditional cross-petition for *certiorari*.

## DISCUSSION

### Contentions of the Parties

The State asserts that the Court of Special Appeals applied an incorrect legal standard of review to McGagh's sufficiency claim when it applied a *de novo* standard of

---

[10] Crim. Law § 3-301(e) defines "Sexual contact" as "an intentional touching of the victim's or actor's genital, anal, or other intimate area for sexual arousal or gratification, or for the abuse of either party. [It] does not include: (i) a common expression of familial or friendly affection; or (ii) an act for an accepted medical purpose."

15

review. Specifically, the State contends that the intermediate appellate court's application of a *de novo* standard of review represents a departure from the long-standing sufficiency of the evidence standard of review articulated in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979), and the standard adopted by this Court. *See State v. Manion*, 442 Md. 419, 430, 112 A.3d 506, 513 (2015) (in reviewing sufficiency, Maryland courts only ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (internal citations omitted) (emphasis in original). The State asserts that the court's application of a *de novo* standard of review is also inconsistent with Maryland Rule 8-131(c), which provides the standard of appellate review of bench trials.

The State argues that there is no public policy reason for departing from the *Jackson* standard of review. The State points out that the Supreme Court decided *Jackson* to safeguard the constitutional requirement that convictions must be proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 316-17, 99 S. Ct. at 2788. A policy exception, according to the State, would make the standard more difficult to apply, and most importantly, it would encroach on the responsibility and capacity of fact finders "to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 319, 99 S. Ct. at 2789.

The State also criticizes the Court of Special Appeals' reliance on the First Amendment as the basis for its application of a *de novo* standard of review. The State cites *United States v. Alvarez*, 567 U.S. 709, 720, 132 S. Ct. 2537, 2546 (2012) (plurality opinion) for the proposition that the First Amendment does not protect perjurious speech

16

and knowingly false reports made to police, and that McGagh should not receive First Amendment protections under the perjury and false report statutes.

The State contests whether perjury or false report will deter sexual assault victims' willingness to file criminal complaints, thereby interfering with their First Amendment right to petition the government. The State points out that perjury and false report require, respectively, proof of a willful and knowing false statement. Good faith reporting of sexual assaults, even if later proven erroneous or unfounded, will not be subject to criminal punishment.

According to the State, the court also erred because McGagh did not raise a First Amendment challenge, nor did her sufficiency claim implicate one. The State noted that this Court has only rarely applied a *de novo* standard of review to a sufficiency of evidence claim when the petitioner squarely raises a First Amendment issue in the appeal. *See e.g., Polk v. State*, 378 Md. 1, 8, 835 A.2d 575, 579 (2003) (reviewing whether a police officer's orders were content-based or content-neutral and in violation of the petitioner's First Amendment rights).

The State argues that creating a *de novo* standard of review exception for perjury allegations may create unintended, negative policy outcomes. Bad actors may falsely petition the legal system to harm innocent parties.[11] A *de novo* standard of review would benefit these bad actors.

---

[11] The State points out that earlier this year, a white woman called 911 to falsely report an assault from a black man. In fact, the man had only requested she comply with the park's dog leash rule. Amir Vera and Laura Ly, *White Woman Who Called Police on*

17

Turning to the Court of Special Appeals' analysis of the evidence, the State argues the court erred by finding insufficient evidence of willful falsity. The State asserts that the two-witness rule only applies to the element of falsity, not willfulness or knowledge. *Brown*, 225 Md. at 610, 616-17, 171 A.2d at 458. The State nonetheless contends that it presented sufficient corroborative evidence to satisfy the two-witness rule when applied to the element of willfulness. According to the State, the Verizon surveillance video independently corroborated Trebay's testimony that he did not recall touching McGagh's breast or inner thigh.

Finally, the State argues that it presented sufficient evidence to support a finding of willful and knowing falsity for the perjury conviction, as well as the conviction for making a false statement. The State points out that McGagh conceded the Verizon store video did not depict what she alleged had occurred. The record also provides sufficient evidence to sustain her conviction for false statement. Moreover, the State asserts that McGagh's claim that Trebay cupped her breast and touched her inner thigh was not substantiated by the video.

McGagh argues that this Court should embrace a *de novo* standard of review for legal sufficiency in cases that implicate the First Amendment right of sexual assault victims to petition the government for redress of grievances. McGagh asserts that the First Amendment protects the right to petition the government, and whenever a fundamental

*a Black Man Bird-Watching in Central Park Has Been Fired*, CNN, https://www.cnn.com/2020/05/26/us/central-park-video-dog-video-african-american-trnd/index.html (last visited Oct. 28, 2020), archived at https://perma.cc/76WF-MCPE.

18

right, like the First Amendment, is at issue, this Court examines the whole record to make sure "the judgment does not constitute a forbidden intrusion on the field of free expression." *Polk*, 378 Md. at 23, 835 A.2d at 588 (Battaglia, J., dissenting). This holistic review of the record includes traditionally unprotected speech to ensure "protected expression will not be inhibited." *Id.* at 25, 835 A.2d at 589 (citation omitted). Accordingly, McGagh asserts that this Court should extend this same approach to perjury allegations.

McGagh also contends that a *de novo* standard of review comports with this Court's recognition of the "clear public policy" in encouraging women to come forward with sexual assault allegations. *Watson v. Peoples Sec. Life Ins. Co.*, 322 Md. 467, 486, 588 A.2d 760, 769 (1991). In *Watson*, this Court held "it is contrary to a clear mandate of public policy to discharge an employee for seeking legal redress against a co-worker for workplace sexual harassment culminating in assault and battery." *Id.* at 480-81, 588 A.2d at 766. According to McGagh, a *de novo* standard of review would serve the public policy articulated in *Watson* by ensuring that a victim's First Amendment right to petition the government for legal redress is not violated by filing a criminal complaint of sexual assault.

Applying a *de novo* standard of review, McGagh argues that the State presented insufficient evidence to establish perjury and false statement. Under a *de novo* standard of review, McGagh contends that she made a credible claim of inappropriate and offensive touching that cannot support a conviction of intentional false statement. According to McGagh, the video shows that Trebay touched McGagh ten times over the two-hour

encounter. She asserts that she consistently relayed the same story of discomfort to Verizon, Officer Heims, and in the Application for Statement of Charges. McGagh argues that her distress from the interaction may have produced a rash, confused, or mistaken description of the events, but it did not amount to a willful, knowing or intentional false oath.

In the event that this Court declines to undertake a *de novo* review of the sufficiency of the evidence, McGagh asserts that the State presented legally insufficient evidence under the *Jackson* standard of review. McGagh contends that the two-witness rule applies to the "essence" of perjury, *Palmisano v. State*, 124 Md. App. 420, 427, 722 A.2d 428, 432 (1999), because the common law language used to describe the *mens rea* element of perjury (e.g., willfully, deliberately, knowingly, and corruptly) overlaps with the element of falsity. McGagh argues that the State erred by limiting the application of the two-witness rule to falsity. *See also State v. Levitt*, 48 Md. App. 1, 9-10, 426 A.2d 383, 389 (1981) (noting confusion over whether falsely, willfully, and knowingly are synonymous with corruptly).

According to McGagh, the Verizon surveillance video was not sufficiently corroborative to satisfy the two-witness rule. She directs us to the trial judge's admission that "I can't say, having looked at two plus hours of video, that I know where his hands were all the time, but my, I feel like they were, he's a, as he said, a garrulous guy, he talks with his hands." *McGagh*, slip op. at 20. In other words, McGagh argues that the video cannot rule out that Trebay touched her breast and inner thigh. Moreover, McGagh contends that Trebay's denial cannot provide independent corroboration on its own.

The video's lack of audio, according to McGagh, also means that the State failed to present sufficient evidence of intent. She posits that the silent video cannot evince whether McGagh's statements arose from a lack of confusion or honest mistake. Accordingly, McGagh asserts that the State cannot satisfy its burden with such lingering ambiguity surrounding McGagh's intent.

In her cross-petition, McGagh also asserts that that there was insufficient evidence to satisfy the element of materiality. She argues that the Court of Special Appeals erroneously concluded without discussion that the statements satisfied the materiality element. According to McGagh, her accusations of being touched on the inner thigh and breast were not material because her charging statement and report to Officer Heims already contained sufficient truthful information to establish probable cause for sexual assault. She points out that the trial court acknowledged that most of the Application for Statement of Charges was correct. She asserts that the sum of her ten-page statement demonstrated a legitimate fear of Trebay. McGagh argues that if the statement did not articulate a legitimate claim of sexual assault, then there was inadequate probable cause for the arrest and the Commissioner erred in issuing an arrest warrant.

**Standard of Review**

As noted above, the members of the panel of the Court of Special Appeals, as well as the parties, do not agree on the standard of appellate review that should apply when reviewing the legal sufficiency of the evidence to sustain McGagh's convictions for perjury and false statement.

21

Maryland Rule 8-131(c) provides the standard for appellate review of bench trials:

> When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

This Court has consistently recognized and applied this rule when reviewing the sufficiency of evidence. *Credible Behavioral Health, Inc.*, *v. Johnson*, 466 Md. 380, 388, 220 A.3d 303, 307 (2019); *see also Manion*, 442 Md. at 431, 112 A.3d at 513 ("It is simply not the province of the appellate court to determine whether . . . [it] could have drawn other inferences from the evidence[.]").

Maryland appellate courts accordingly adopt a deferential standard when reviewing sufficiency of evidence that asks whether "*any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). For the reasons stated more fully herein, we decline to deviate from the deferential sufficiency of the evidence standard of review enunciated in *Jackson*, our jurisprudence, and the Maryland Rules.

### Sufficiency of the Evidence

**A. The Court of Special Appeals Erred by Independently Reviewing the Sufficiency of Evidence of McGagh's Perjury and False Statement Convictions.**

The Court of Special Appeals erred by applying a *de novo* standard of review to a sufficiency of evidence issue. While the court articulated important First Amendment and

policy considerations, these considerations do not warrant deviation from the *Jackson* standard.

We normally review sufficiency of evidence rulings by whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Manion*, 442 Md. at 430, 112 A.3d at 513 (quoting *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789) (emphasis in original). This Court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Dawson v. State*, 329 Md. 275, 281, 619 A.2d 111, 114 (1993) (emphasis in original). "[O]ur concern is only whether the verdict was supported by sufficient evidence, direct or circumstantial, which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *Taylor v. State*, 346 Md. 452, 457, 697 A.2d 462, 465 (1997). The deferential standard recognizes the trier of fact's better position to assess the evidence and credibility of the witnesses. *Smith v. State*, 415 Md. 174, 184-85, 999 A.2d 986, 992 (2010).

McGagh did not raise a First Amendment challenge of whether *de novo* review applied either at trial or in her appeal to the Court of Special Appeals. Rather, McGagh's argument concerned whether the State presented sufficient evidence under *Brown*'s two-witness rule to convict her for perjury and false statement. The Court of Special Appeals, *sua sponte*, addressed whether McGagh's convictions infringed upon her First Amendment right to petition the government for legal redress, thereby triggering *de novo* review.

As a threshold matter, Maryland appellate courts may exercise the discretion to review issues not raised in the proceedings below. *Conyers v. State*, 367 Md. 571, 593-94, 790 A.2d 15, 28-29 (2002); *see also State v. Bell,* 334 Md. 178, 188-89, 638 A.2d 107, 113 (1994) (noting limited circumstances where an appellate court, in its discretion, may discuss issues not raised below). The Court of Special Appeals could consider the First Amendment implications of McGagh's convictions, but Maryland law does not justify *de novo* review in this case.

Maryland courts have always used the sufficiency of evidence standard to review perjury convictions. *See e.g., Furda*, 421 Md. at 353, 26 A.3d at 930-31 (giving "great deference to a hearing judge's . . . credibility determinations because credibility determinations are made by trial courts, not appellate courts.") (internal citations omitted). Perjury and false report convictions heavily depend on the fact finder's determination of credibility. The fact finder must intimately evaluate each party's story to assess who is telling the truth. The deferential standard of review recognizes trial courts' better position in making this determination. *See Tierco Maryland, Inc. v. Williams*, 381 Md. 378, 428, 849 A.2d 504, 534-35 (2004) (Bell, C.J., dissenting) ("Having lived with the case, the trial judge views the situation in three dimension, up close and personal, not from a cold record; thus, having closely observed the entire trial, he or she is able to appreciate nuances, inflections and impressions never to be gained from a cold record.") (internal quotation omitted).

In some cases, this Court has supplemented the *Jackson* standard with a *de novo* review when a constitutional right is at issue. The independent examination ensures this Court's protection of fundamental rights. Our case law demonstrates the proper application of *de novo* review when the State, through action or statute, seeks to regulate or control protected speech. *Diehl v. State*, 294 Md. 466, 472, 451 A.2d 115, 118-19 (1982) (supplementing the sufficiency of evidence analysis with *de novo* review to determine whether a disorderly conduct statute proscribed protected speech); *see also B & A Co. v. State*, 24 Md. App. 367, 371-72, 330 A.2d 701, 704 (1975) (combining a *de novo* standard of review and sufficiency of evidence analysis to determine whether the First Amendment protects alleged obscene material).

In *Polk*, the State charged the defendant with disobeying a lawful order after the defendant responded with a series of profanities to an officer's instruction to be quiet and leave the hospital. *Polk*, 378 Md. at 3, 835 A.2d at 576. The case turned on whether the order attempted to control the content of her speech or her aggressive behavior at a hospital. *Id.* at 7, 835 A.2d at 579. This Court began its analysis by stating: "We view the evidence in a light most favorable to the prosecution. We give 'due regard to the [fact finder's] finding of facts, its resolution of conflicting evidence, and significantly, its opportunity to observe and assess the credibility of witnesses.'" *Id.* at 8, 835 A.2d at 579 (citations omitted). This Court conducted a *de novo* review to determine to what extent, if any, the officer's order violated the defendant's First Amendment right to free speech. *Id.*, 835

25

A.2d at 579. Specifically, the Court used an *Eanes* analysis,[12] informed by the trial court's finding of facts, to evaluate the constitutionality of the officer's instruction. *Id.* at 13, 835 A.2d at 582.

This Court conducted a *de novo* review in *Polk* because it was necessary to determine whether a State action, regulation or statute may have violated protected speech under the First Amendment. Perjurious speech does not receive First Amendment protection. The Supreme Court explained in *United States v. Alvarez*:

> It is not simply because perjured statements are false that they lack First Amendment protection. Perjured testimony "is at war with justice" because it can cause a court to render a "judgment not resting on truth." Perjury undermines the function and province of the law and threatens the integrity of judgments that are the basis of the legal system.

*United States v. Alvarez*, 567 U.S. 709, 720-21, 132 S. Ct. 2537, 2546 (2012) (plurality opinion) (internal citations omitted). Even in *Entler*, cited by the Court of Special Appeals and McGagh, the Ninth Circuit declined to extend First Amendment protection to "baseless" accusations. *Entler*, 872 F.3d at 1043 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743, 103 S. Ct. 2161, 2170 (1983) ("Just as false statements are

---

[12] In *Eanes v. State*, 318 Md. 436, 569 A.2d 604 (1990), this Court articulated a three-part test to evaluate whether a regulation of speech is constitutional. *Id.* at 447, 454-56, 569 A.2d at 609, 613. The test examines (1) the time, place, and circumstances of the speech, (2) whether the regulation is content-based or content-neutral, (3) and whether the speaker could use less disruptive forms of speech. *Id.* at 447, 454-56, 569 A.2d at 609, 613. This Court explained in *Polk* that while it performs the *Eanes* analysis *de novo*, it still applies a clearly erroneous standard to the trial court's finding of fact. "Thus, the issue before us is not whether [the officer's] orders were more likely content-based than content-neutral, but whether the trial court's factual determination was *clearly erroneous* that his orders, in the main, were directed at the volume of Polk's speech." *Polk*, 378 Md. at 13-14, 835 Md A.2d at 582 (emphasis added).

26

not immunized by the First Amendment right to free speech, baseless litigation is not immunized by the First Amendment right to petition.") (internal citations omitted)). Unprotected speech renders unnecessary an independent review of the record for First Amendment violations.[13]

Here, McGagh's First Amendment rights were not implicated in this case, let alone violated. McGagh did not challenge the constitutionality of the perjury statute on its face or as applied to her. The Court of Special Appeals only suggested that the facts of the case "arguably" triggered a *de novo* review to evaluate First Amendment interests. *See McGagh*, slip op. at 4. The court reads too much of a First Amendment interest into the case. The case turns on whether the State presented sufficient evidence to prove the elements of perjury and false report; it does not turn on whether the State infringed upon her protected speech.

Unlike in *Polk*, where this Court needed to determine whether an officer's order infringed on the defendant's right to speak (albeit vulgarly), McGagh does not claim the perjury and false report statutes infringed upon her right to petition the government for redress. It would similarly be unnecessary for us to conduct a constitutional analysis here as this Court did in *Polk*. Respondent never voiced any deterred ability to make a criminal complaint by threat of perjury.

---

[13] We do not say that a perjury statute could never infringe on an individual's right to petition the government.

Even if McGagh had raised such concerns, the perjurious content of McGagh's speech also means it lacks First Amendment protection. As the Supreme Court explained in *Alvarez,* false statements do not receive First Amendment protection because they undermine the integrity of the justice system. *Alvarez*, 567 U.S. at 720-21, 132 S. Ct. at 2546 (plurality opinion). The trial court identified multiple instances where McGagh's false statements harmed the justice system. The false accusation pulled Officer Heims away from his other law enforcement duties to investigate her specious claim. It occupied the attention of the Commissioner in evaluating and issuing the arrest warrant. It wasted the time of the officers who arrested Trebay. It consumed the time of the trial court in litigating her claim. It could have eroded Officer Heims's and the Commissioner's trust in subsequent, truthful sexual assault accusations. Finally, it could have produced the unjust result of Trebay's conviction for sexual assault. The First Amendment does not guarantee the right to make statements that undermine the integrity of the legal system.

We hold the Court of Special Appeals erred by using a *de novo* standard of review when no First Amendment right was implicated in the case. Our holding in no way departs from this Court's previously acknowledged important public policy objective of encouraging women, and all victims of sexual assault, to bring their truthful sexual assault allegations to light. *Watson*, 322 Md. at 486, 588 A.2d at 769. It also does not abridge an individual's First Amendment right to truthfully and in good faith report a sexual assault without punishment or intimidation, even if the allegation is later shown to be mistaken, confused, or erroneous.

**B. The State Presented Sufficient Evidence to Prove Elements of Willful and Knowing False Statement Beyond a Reasonable Doubt.**

The State provided sufficient evidence to prove beyond a reasonable doubt that McGagh willfully and knowingly made a false statement to Officer Heim and in her Application for Statement of Charges.

The trial court convicted McGagh of both perjury and false statement. Both of these crimes concern making a false, material statement. Perjury has a *mens rea* element of willfulness, whereas false statement has a *mens rea* of knowingly false with intent to deceive. Based on the similarity of the two statutes, we will analyze the statute's elements in tandem.

1. The two-witness rule applies solely to the element of falsity.

The parties contest whether the two-witness rule applies to each element or just falsity. The two-witness rule describes the minimum evidence needed to establish the falsity of a statement.[14] *Brown*, 225 Md. at 616, 171 A.2d at 458 ("The rule that testimony

---

[14] While appellate courts have criticized the two-witness rule as an anachronism, *see e.g., Smith v. State*, 51 Md. App. 408, 423-24, 443 A.2d 985, 993-94 (1982) ("we are of the opinion that the [two-witness rule] laid down is out of harmony with our system of jurisprudence"), it could more appropriately be described as a misnomer given its modern definition. The rule no longer requires two actual witnesses. Judge Frederick J. Singley wrote for this Court in *State v. Devers & Webster*, 260 Md. 360, 272 A.2d 794 (1971): "Maryland no longer requires that perjury be established by the direct testimony of two witnesses, as was the case at common law. It is enough that there is testimony of one witness and other independent corroborative evidence[.]" *Id.* at 372, 272 A.2d at 800. Independent corroborative evidence comes in the form of documents, video footage, or other circumstantial evidence. Similar to its mislabeled evidentiary cousin, the best evidence rule, the two-witness rule might sound inapt, but the rule's logical underpinnings remain sound. *See Weiler v. United States*, 323 U.S. 606, 610, 65 S. Ct. 548, 550 (1945)

(continued . . .)

of a single witness is not sufficient to negative the alleged false oath is not merely technical, but is founded on substantial justice. There must either be two witnesses *to prove such falsity*, or one witness with material and independently established corroborative facts.") (emphasis added) (citation omitted). The two-witness rule applies only to the falsity element.

This Court explained the historical rationale for the two-witness rule in *Brown*:

> At common law it was originally held that to warrant a conviction of perjury the falsity had to be shown by direct and positive testimony of two witnesses. The rule has been said to be deeply rooted in past centuries having its inception in the Star Chamber. Perjury was treated as a high misdemeanor which required a greater measure of proof than any other crime known to law, treason alone excepted.

*Brown*, 225 Md. at 616, 171 A.2d at 458 (internal citations omitted). This rule prevented disputes over "oath against oath" or merely one party's word against another. *Smith*, 51 Md. App. at 421, 443 A.2d at 992.

Over time, Maryland common law relaxed the stringent two-witness requirement "so as to allow a conviction of perjury to stand if there are two witnesses, *or one witness corroborated by circumstances proved by independent testimony*." *Brown*, 225 Md. at 616, 171 A.2d at 458 (emphasis added) (citations omitted). The corroborated testimony must "be of equal weight to that of at least a second witness[.]" *Id.* at 616-17, 171 A.2d at 458.

---

("The [two-witness] rule has long prevailed, and no enactment in derogation of it has come to our attention."); *see also* Judge Charles E. Moylan's observation of the best evidence rule in *Thompson v. State*, 62 Md. App. 190, 208, 488 A.2d 995, 1004 (1985) ("the so-called 'Best Evidence' Rule . . . as every treatise writer on evidence points out, should more properly be called the 'Original Document' Rule.").

30

Such circumstantial evidence may include "documentary evidence, springing from the defendant . . . [taking] the place of a 'living witness.'" *Id.* at 617, 171 A.2d at 459.

Maryland appellate courts have consistently applied the two-witness rule to the element of *falsity*, not other elements of perjury. *See Hourie v. State*, 298 Md. 50, 64, 467 A.2d 1016, 1024 (1983) (noting no direct testimony was offered relevant to the *falsity* of the defendant's statements); *see also Mason v. State*, 225 Md. App. at 475, 126 A.3d at 133-34 (permitting video to independently corroborate the falsity of defendant's statement).[15]

Federal courts have similarly applied the two-witness rule to the element of falsity in a substantially similar federal perjury statute.[16] *Weiler*, 323 U.S. at 607, 65 S. Ct. at 549 ("The general rule in prosecutions for perjury is that the uncorroborated oath of one witness

---

[15] A majority of our sister jurisdictions have also limited the application of the two-witness rule to the element of falsity. J. A. Bock, Annotation, *Conviction of Perjury Where One or More of Elements is Established Solely by Circumstantial Evidence*, 88 A.L.R.2d 852 (2020) (cataloging 27 jurisdictions requiring "that falsity of a statement of fact be established by the testimony of two witnesses or one witness and corroborating circumstances.").

[16] The federal perjury statute, 18 U.S.C. § 1621, provides in pertinent part:

Whoever—(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that *he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true* [shall be guilty of perjury.]

(Emphasis added).

31

is not enough to establish the *falsity* of the testimony of the accused set forth in the indictment.") (emphasis added) (citation omitted); *Hammer v. United States*, 271 U.S. 620, 628-29, 46 S. Ct. 603, 605 (1926) (holding perjury as well as subornation of perjury require satisfying the two-witness rule for the *element of falsity*).

In *Hourie v. State*, this Court applied the relaxed two-witness rule to the falsity element. *Hourie*, 298 Md. at 64, 467 A.2d at 1024. The State charged Hourie for falsely reporting her income and household size on her application for food stamps. *Id.* at 55, 467 A.2d at 1019. The State admitted testimony of a Department of Social Services worker, along with tax, public school, and health records illustrating Hourie's falsified income and family size. The trial court, following a bench trial, found sufficient evidence to convict. *Hourie*, 298 Md. at 59, 467 A.2d at 1021. The trial court rejected the defendant's story, describing certain aspects as "garbage." *Id.*, 467 A.2d at 1021. The trial court found the State's witness and corroborating documentary evidence as illustrative of the "falseness" of Hourie's claimed income and family size. *Id.*, 467 A.2d at 1021.

This Court held that "the evidence clearly was sufficient to prove beyond a reasonable doubt that Ms. Hourie was guilty as charged." *Id.* at 64, 467 A.2d at 1024. The State did not need a second witness because the documentary evidence "[was] more convincing than would be the recollection of one or two witnesses[.]" *Id.* at 63, 467 A.2d at 1023 (quoting *United States v. Collins*, 272 F.2d 650, 652 (2d Cir. 1959)).

Here, and similar to *Hourie*, we "clearly" have sufficient evidence from Trebay's testimony, the Verizon surveillance video, and McGagh's admission in court for "*any*

32

rational trier of fact" to find the falsity of McGagh's statements beyond a reasonable doubt. Trebay testified that he did not "recall" putting his hand on McGagh's breast or inner thigh. The Verizon surveillance video corroborated his testimony by also showing that the contact alleged by McGagh did not occur. McGagh also conceded during her colloquy with the trial court that the alleged touching did not occur. While other potential witnesses, including Trebay's nearby coworker or store patrons, could have provided testimony, the Verizon surveillance video, like in *Hourie*, gives the fact finder "far stronger, more cogent, and more convincing" evidence to observe, compare, and judge the party's alleged version of events. *Hourie*, 298 Md. at 63, 467 A.2d at 1023 (citation omitted).

The Verizon surveillance video in this case also satisfies the purpose of the two-witness rule articulated in *Brown*. The two-witness rule prevents "oath against oath" by allowing the fact finder to observe and judge the credibility of witnesses offering competing recollections of events, while comparing the witness statements against independent, circumstantial evidence. The trial court here had the opportunity to judge and observe McGagh's and Trebay's testimony. The Verizon surveillance video provided independent corroboration of the pertinent factual dispute: whether Trebay cupped McGagh's breast and touched her inner thigh.

The Court of Special Appeals found that the surveillance video's lack of sound created too much ambiguity to prove the falsity of McGagh's claims, thereby adopting a too stringent reading of the two-witness rule. Evidence always contains some ambiguity,

but the two-witness rule does not require circumstantial evidence to be perfect.[17] "The test" for whether evidence satisfies the two-witness rule is "whether the evidence is of a quality to assure that a guilty verdict is solidly founded." *Id.*, 467 A.2d at 1023; *see also United States v. Wood*, 39 U.S. 430, 439-40 (1840) ("The question is, when and how the rule is to be applied, that it may not, from a technical interpretation, or positive undeviating adherence to words, exclude all other testimony as strong and conclusive that which the rule requires."). If other evidence is of "equal weight" to testimony by a witness, it can satisfy the two-witness rule.

In *Mason v. State*, 225 Md. App. 467, 126 A.3d 129 (2015), the Court of Special Appeals held that a State Police's dashboard camera sufficiently corroborated the trooper's testimony that a couple swapped seats to avoid a driving under the influence of alcohol ("DUI") conviction. 225 Md. App. at 472, 126 A.3d at 131. The camera footage omitted sound, which could have addressed some lingering ambiguities about the defendants' actions. But sound would not have necessarily helped the fact finder determine who, in fact, was driving the vehicle initially pulled over. Similar to *Mason*, sound could have better illuminated McGagh's state of mind and Trebay's demeanor, but it is not necessary in answering the pertinent factual question of whether Trebay's alleged sexual assault, specifically the touching of McGagh's breast and inner thigh, in fact occurred.

---

[17] The applicable standard of review also requires a reviewing court to "view the evidence in a light most favorable to the prosecution." *Polk*, 378 Md. at 8, 835 A.2d at 579.

We adopt the reasoning of the Court of Special Appeals in *Mason* and hold the Verizon video evidence provided sufficient independent corroboration to establish the falsity of McGagh's statements.

2. <u>The State provided sufficient evidence to prove willful falsity and knowledge of falsity with the intent to deceive and cause an investigation.</u>

The State provided sufficient evidence to satisfy the *mens rea* elements of McGagh's perjury and false statement convictions. While perjury requires a showing of willfulness and false statement requires a showing of knowledge and intent to deceive, we equate these terms "in substance and effect[.]" *Greenwald v. State*, 221 Md. 235, 244, 155 A.2d 894, 899 (1959). To satisfy these elements, "the false oath must be deliberate and not the result of surprise, confusion or bona fide mistake[.]" *Furda*, 421 Md. at 353, 26 A.3d at 930 (quoting *Myers v. State*, 303 Md. 639, 640 n.1, 496 A.2d 312, 312 n.1 (1985)). Proof of falsity permits a trial court's inferences of wrongful intent. Rollin M. Perkins, *Criminal Law* Ch. 5 § 3, 460 (2d ed. 1969). The reviewing court must pay "great deference" to the trial court's credibility findings in determining deliberateness. *Furda*, 421 Md. at 353, 26 A.3d at 930.

In *Furda*, the State charged the defendant with "knowingly [giving] false information . . . in a firearm application" and "willfully and falsely [making] an oath or affirmation as to a material fact" under Maryland's firearm safety and perjury statute, respectively. *Id.* at 354, 26 A.3d at 931. Police seized Furda's extensive collection of weapons after a domestic altercation with his wife. *Id.* at 336, 26 A.3d at 920. The State committed Furda to a behavioral health facility. *Id.* at 338, 26 A.3d at 922. Upon his

35

release, Furda requested the return of his guns. *Id.* at 339, 26 A.3d at 922. A judge denied the request because of his commitment to a mental institution. *Id.* at 339-40, 26 A.3d at 922. Furda motioned for reconsideration, but before the judge's decision, Furda purchased a firearm and certified, under penalty of perjury, that he had not been committed to a mental institution. *Id.* at 350, 26 A.3d at 922-23.

During trial, Furda's attorney testified that he explained to Furda his inability to purchase a gun because of his involuntary commitment to a mental institution. *Id.* at 342, 26 A.3d at 924. Furda still signed his name attesting that "I am not prohibited by law from purchasing or possessing a regulated firearm[.]" *Id.* at 353, 26 A.3d at 931. The trial court found that Furda knew a court order prevented his purchase of weapons and "the false statement was not the result of confusion or honest mistake." *Id.* at 342, 26 A.3d at 924. "[Furda] attempted to deceive the Maryland State Police . . . because he wanted a gun and he didn't want to put down the truth." *Id.*, 26 A.3d at 924. This Court held that there was sufficient evidence to support the trial court's finding of a deliberate false oath because Furda's pending motion for reconsideration coupled with his attorney's advice demonstrated that Furda knew he could not purchase a gun by law, and his decision to falsely attest to his ability to purchase a gun did not arise from mistake or confusion. *Id.* at 353, 26 A.3d at 930.

Here, the trial court found that McGagh exhibited similar deliberate behavior as the defendant in *Furda*: "I don't believe that [McGagh] was confused about what happened. It's far more likely that she wanted Mr. Trebay fired and the story started and was sort of

36

like that proverbial snowball going down the hill, it just got more ingrained and more elaborate, but it was false." The trial court rejected the possibility that McGagh alleged sexual assault by mistake: "[I]t's not even a close call. He didn't cup her breast, he didn't brush her breast, he did not touch her breast or her chest in any way. . . . Which is, frankly, not an easy thing to do when one is wearing, a very downy fleece or down vest, which just, you know, it's thick and straight across your chest." The trial court further observed that "[Trebay] never got close to her upper inner thigh."

The trial court reasonably found that McGagh willfully and knowingly made a false statement when she alleged that Trebay sexually assaulted her by touching her breast and inner thigh.

## C. The State Presented Sufficient Evidence to Prove the Element of Materiality.

McGagh filed a cross-petition challenging the Court of Special Appeals holding that "the materiality component of the perjury and false report charges has been satisfied." *McGagh*, slip op. at 22. We agree with the Court of Special Appeals and hold that the State provided sufficient evidence to prove the materiality of McGagh's willfully and knowingly false statement.

In the context of perjury, materiality constitutes "a statement *capable* of affecting the course or outcome of the proceedings or the decision-making of the court[.]" *Palmisano v. State*, 124 Md. App. 420, 429-30, 722 A.2d 428, 429-30 (1999); *see also Kungys v. United States*, 485 U.S. 759, 770, 108 S. Ct. 1537, 1546 (1988) (defining materiality as "a natural tendency to influence, or [be] capable of influencing, the decision

37

of the decision making body to which it was addressed.") (internal quotation marks omitted).

In *Greenwald v. State*, a doctor helped underage couples secure a marriage license without parental permission by falsely certifying the existence of a pregnancy. 221 Md. at 238, 155 A.2d at 896. These certifications constituted *materially* false statements because they affected the court's decision whether to grant a marriage license. *Id.* at 239, 155 A.2d at 896.

Similar to the doctor's false statement in *Greenwald* that triggered court action, McGagh's false statement triggered court action here. McGagh's accusation of sexual assault provided the "essential basis for the Commissioner's decision to issue a warrant and the ordering of Trebay's arrest." *McGagh*, slip op. at 22. Without her contention of impermissible sexual contact in her complaint, the Commissioner would not have had the same substantial basis to order the arrest. This same reasoning applies to McGagh's false statement to Officer Heims. Much of McGagh's statement to Officer Heims was truthful. Her statement satisfied the materiality element when she falsely claimed that Trebay inappropriately touched her. Instead of disabusing Officer Heims of his suggestion that Trebay "cop[ped] a feel," McGagh agreed, "that was exactly what it was." After hearing McGagh's statement, Officer Heims conferred with his supervisor and advised McGagh of moving ahead with a criminal conviction.

## CONCLUSION

For the reasons previously explained, we reverse the judgment of the Court of Special Appeals.  The State presented sufficient evidence to prove the elements of perjury and false statement beyond a reasonable doubt.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED. COSTS TO BE PAID BY RESPONDENT.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/12a20cn.pdf